**REDACTED VERSION**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GARDNER DENVER, INC.,

        *Plaintiff,*

v.

ARCH INSURANCE COMPANY;
CONTINENTAL CASUALTY COMPANY; and
FEDERAL INSURANCE COMPANY,

        *Defendants.*

Civil Action No. 16-CV-00159-JHS

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
PLAINTIFF GARDNER DENVER, INC.'S MOTION TO COMPEL
REGARDING PRIVILEGE AND WORK PRODUCT DESIGNATIONS
ASSERTED BY DEFENDANT FEDERAL INSURANCE COMPANY**

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION .................................................................................. 1

II.     BACKGROUND ................................................................................... 2

        A.      On three separate occasions, this Court has rejected Federal's arguments
                that the drafting histories of "bump up" exclusions are irrelevant. ...................... 2

        B.      Since resolution of the relevance battle, Federal has resorted to privilege
                and work product objections to shield the drafting history of its "bump up"
                exclusions from discovery. ........................................................................... 4

III.    THE GOVERNING LEGAL STANDARDS SUPPORT THIS MOTION ...................... 6

IV.     ARGUMENT ......................................................................................... 7

        A.      The Court should order Federal to produce documents improperly
                included in its privilege and redaction logs. ............................................. 7

                1.      The attorney-client privilege does not allow insurers to conceal
                        their core business activities through a strategic use of lawyers. .............. 7

                2.      The work-product doctrine does not apply to documents created
                        before Federal could reasonably anticipate this litigation, or that
                        Federal made in the ordinary course of business. ...................................... 9

        B.      In the alternative, the Court should review the fifteen documents *in
                camera* to determine whether the attorney-client privilege or work-product
                protection applies. ...................................................................................... 12

V.      CONCLUSION ..................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIU Ins. Co. v. TIG Ins. Co.,*
   No. 07 Civ. 7052(SHS)(HBP), 2008 WL 4067437 (S.D.N.Y Aug. 28, 2008)..........................7

*Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.,*
   61 F.R.D. 115 (N.D. Ga. 1972).....................................................................................11

*Cal. Union Ins. Co. v. Nat. Union Fire Ins. Co.,*
   No. 86–CV–609, 1989 WL 48413 (N.D.N.Y. Apr. 27, 1989) ..................................................7

*Dansko Holdings, Inc. v. Benefit Trust Co.,*
   NO. 16-324, 2017 WL 5593321 (E.D. Pa. Nov. 21, 2017) ......................................................13

*Diversified Industries, Inc. v. Meredith,*
   572 F.2d 596 (8th Cir. 1977) .................................................................................................8

*E.E.O.C. v. Guess?, Inc.,*
   176 F. Supp. 2d 416 (E.D. Pa. 2001) .............................................................................7, 11, 12

*Gardner Denver, Inc. v. Arch Ins. Co.,*
   No. CV 16-0159, 2016 WL 7324646 (E.D. Pa. Dec. 16, 2016) .............................................1, 2

*In re Grand Jury Investigation,*
   599 F.2d 1224 (3d Cir. 1979).....................................................................................................7

*In re Grand Jury Matter,*
   147 F.R.D. 82 (E.D. Pa. 1992) ...................................................................................................7

*In re Grand Jury Subpoenas,*
   561 F. Supp. 1247 (E.D.N.Y. 1982) ..........................................................................................8

*Harper v. Auto-Owners Ins. Co.,*
   138 F.R.D. 655 (S.D. Ind. 1991)...........................................................................................7, 11

*Hawker v. BancInsurance, Inc.,*
   No. 1:12–cv–01261–SAB, 2013 WL 6843088 (E.D. Cal. Dec. 27, 2013)..............................11

*Kerr v. U.S. District Court,*
   426 U.S. 394 (1976)..................................................................................................................12

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.,*
   253 F.R.D. 300 (D.N.J. 2008)...................................................................................................11

*Martin v. Bally's Park Place Hotel & Casino,*
    983 F.2d 1252 (3d Cir. 1993)...................................................................................10

*Mission Nat. Ins. Co. v. Lilly,*
    112 F.R.D. 160 (D. Minn. 1986).................................................................................8

*In re Premera Blue Cross Customer Data Sec. Breach Litig.,*
    No. 3:15-MD-2633-SI, 2017 WL 4857596 (D. Or. Oct. 27, 2017)............................11

*In re Processed Egg Prods. Antitrust Litig.,*
    278 F.R.D. 112 (E.D. Pa. 2011)..................................................................................7

*Robinson v. Countrywide Home Loans, Inc.,*
    No. CIV.A. 08-1563, 2010 WL 4737816 (W.D. Pa. Nov. 16, 2010) .........................6

*Southeast Pa. Transp. Auth. v. Caremarkpcs Health, L.P.,*
    254 F.R.D. 253 (E.D. Pa. 2008)................................................................................12

*Stephenson Equity Co. v. Credit Bancorp., Ltd.,*
    No. 99 CIV 11395IRWS, 2002 WL 59418 (S.D.N.Y. Jan. 16, 2002)......................11

*Sullivan v. Warminster Twp.,*
    274 F.R.D. 147 (E.D. Pa. 2011).............................................................................7, 10

*United Coal Cos. v. Powell Const. Co.,*
    839 F.2d 958 (3d Cir. 1988)......................................................................................12

*United States v. Nixon,*
    418 U.S. 683 (1974)..................................................................................................12

*Wachtel v. Health Net, Inc.,*
    482 F.3d 225 (3d Cir. 2007)........................................................................................7

**Other Authorities**

8 Wright & Miller, *Federal Practice Procedure, Civil,* § 2017 (1970 and 1986
    Supp.)..........................................................................................................................8

GDI submits this memorandum in support of its motion to compel Federal to produce documents withheld based on improper assertions of attorney-client privilege or work-product protection in Entry Nos. 11, 13-22, 24, and 25 of its privilege log and Entry Nos. 81 and 82 of its redaction log.[1]

## I.    INTRODUCTION

This Court repeatedly has ruled that information concerning the drafting histories of "bump up" exclusions ("**BUEs**") and their interpretation across the insurance industry is highly relevant because GDI's reasonable expectations regarding BUEs are at the heart of this case.[2]

Having lost the relevancy battle, Federal now improperly seeks to shield such documents from discovery on the basis of privilege and work-product objections.  Federal has withheld or redacted fifteen drafting history documents, asserting that each is privileged, and that most are protected work product, simply because Federal assigned the drafting function to attorneys in its legal department.  Federal has stated that it assigned the drafting function this way precisely to shield it from scrutiny.

As discussed below, that is precisely what the law says insurance companies cannot do. Federal is not a company, such as Apple, for which legal contracts with the customer are ancillary to the core business product being sold (i.e., personal devices).  Rather, one of the core businesses of insurers is preparing contracts (i.e., policies); the policies *are* Federal's business

---

[1]    In this brief, "**GDI**" refers to Plaintiff Gardner Denver, Inc.; "**Federal**" refers to Federal Insurance Company; "**Arch**" refers to Defendant Arch Insurance Company; "**Continental**" refers to Defendant Continental Casualty Company; and "**Defendants**" refers to Arch, Continental, and Federal, collectively.  The most recent version of Federal's privilege log is attached hereto as **Exhibit 5** and the most recent version of its redaction log is attached hereto as **Exhibit 6**.

[2]    *Gardner Denver, Inc. v. Arch Ins. Co.*, No. CV 16-0159, 2016 WL 7324646, at \*6 (E.D. Pa. Dec. 16, 2016) ("Courts in this Circuit and in Pennsylvania have routinely looked at the totality of the circumstances to determine the reasonable expectations of the insured.").

product. Thus, Federal cannot hide its drafting history from discovery through a strategic use of lawyers.

Recognizing this, not even Arch, Federal's co-defendant, has sought to stretch privilege and work product as Federal seeks to do. Arch also tasked an attorney in its legal department with policy drafting responsibilities, but unlike Federal, Arch produced the vast majority of its drafting history materials, including those penned by the policy-drafting attorney, subject to a non-waiver agreement. The only materials that Arch withheld or redacted are those involving attorneys, such as outside counsel, with no drafting responsibilities whatsoever and that were sent to, or by, these attorneys solely in connection with obtaining legal advice. The Court should therefore require Federal to follow Arch's lead and provide GDI the documents written by Federal policy drafters who just happen to be lawyers.

## II.    BACKGROUND

### A.    On three separate occasions, this Court has rejected Federal's arguments that the drafting histories of "bump up" exclusions are irrelevant.

On three separate occasions, the Court rejected arguments that BUE drafting histories are irrelevant to this case. First, in its decision denying Defendants' motions to dismiss, the Court rejected the insurers' assertion that the "plain language" of the BUE at issue precludes coverage. The Court stated not only that the policy's language is ambiguous,[3] but also that Pennsylvania's "reasonable expectations" doctrine also requires a chronological review of "the history and critical provisions of these insurance policies and those that followed" to "properly frame the legal issues" in the case.[4] Second, in granting GDI's motion to compel production of documents

---

[3]    *Gardner Denver, Inc.*, 2016 WL 7324646, at *5.
[4]    *Gardner Denver, Inc.*, 2016 WL 7324646, at *2.

2

outside the 2010 through 2013 timeframe (the "Category 1" documents),[5] the Court rejected the

insurers' attempt to shrink the temporal scope of discovery to the 2010 through 2013 timeframe,

noting:

> in terms of the scope of the discovery, it seems to me that the history of the critical provisions of the insurance policies are all relevant discovery in this case, how and critical portion of the coverage developed, and the changes, course of conduct, all go to what the cases, in effect, say is relevant to Plaintiff's claims in this case.[6]

Third, in granting GDI's Motion to Compel Discovery (Doc. 56) regarding, *inter alia*, BUE

drafting histories (the "Category 2" documents), the Court rejected Federal's argument that the

drafting histories of its BUEs are irrelevant



---

[5]   *See* Doc. Nos. 48-51, Letter Brief(s) re: Discovery Ruling, which were filed simultaneously on June 19, 2017 at the direction of the Court.
[6]   Certificate & Decl. of Counsel, Ex. 1, Tr. of 7/5/2017 Hr'g, at 5:7-13.
[7]   Certificate & Decl. of Counsel, Ex. 2, Tr. of 9/15/2017 Hr'g, at 34:7-13, 34:23-24; 35: 2-4.

3



Despite this history, Federal initially continued to resist producing documents after this ruling. Forced to draft a deficiency letter, GDI pointed out that Federal's position was untenable.[9] Federal then finally produced additional responsive materials.[10]

**B.     Since resolution of the relevance battle, Federal has resorted to privilege and work product objections to shield the drafting history of its "bump up" exclusions from discovery.**

After producing drafting history documents, Federal then provided privilege and redaction logs on April 16, 2018.[11] Federal served updated privilege and redaction logs on May 1, 2018.[12]

Both Arch and Federal withheld or redacted some documents sent to, or from, attorneys in their respective legal departments who served as policy drafters. Arch's privilege and redaction logs list several documents involving John Richardson, an attorney in Arch's legal department tasked with policy-drafting responsibilities; however, Arch also produced numerous documents involving Mr. Richardson. Federal's most recent privilege and redaction logs list fifteen documents, each of which involve Kelly Daly, Stewart Cane, or another attorney in Federal's legal department who—as with Mr. Richardson for Arch—was tasked with policy-

---

8    Certificate & Decl. of Counsel, Ex. 2, Tr. of 9/15/2017 Hr'g, at 36:2-17.
9    Certificate & Decl. of Counsel, Ex. 3, 3/5/2018 Ltr. from B.Buchman to J.Davis, at p. 3 of 6.
10   Certificate & Decl. of Counsel, ¶ 5.
11   Certificate & Decl. of Counsel, ¶ 7.
12   Certificate & Decl. of Counsel, ¶ 7, Ex. 5, Federal's Updated Priv. Log, *passim*; *id.*, Ex. 6, Federal's Updated Redaction Log, *passim*.

drafting functions.[13]  Federal claims that all fifteen documents come within the attorney-client privilege, and asserts that a subset (eleven of the fifteen documents) are also protected work product.[14]

On April 19, 2018, the parties held a meet and confer to discuss privilege and redaction logs.[15]  GDI discussed the way it handled documents involving Marec Edgar, an attorney in its legal department who led GDI's policy placements from 2004 through and including 2012.  GDI took a minimalist approach to the "two hat issue" (i.e., that Mr. Edgar had both legal and business responsibilities at GDI) and, thus, did not withhold any documents simply because Mr. Edgar was involved.[16]  Instead, it erred on the side of production, subject to a non-waiver agreement,[17] and agreed to make the non-waiver agreement reciprocal.[18]  In response, Arch clarified that, based on the non-waiver agreement, it took a similar approach to Mr. Richardson's documents.  Arch did not withhold or redact any document based on the mere fact that Mr. Richardson (or any other attorney) was involved.[19]  Instead, the only documents appearing on Arch's logs are those Mr. Richardson sent to, or received from, other Arch lawyers—both in Arch's legal department and Arch's outside counsel—who had no policy-drafting responsibilities

---

[13]  Certificate & Decl. of Counsel, Ex. 5, Federal's Updated Priv. Log, at Entry Nos. 11, 13-22, 24-25; *id.*, Ex. 6, Federal's Updated Redaction Log, at Entry Nos. 81 & 82.  The Federal legal department attorneys with drafting responsibilities who appear in its logs are Kelly Daly, Stewart Cane, Jennifer Moore, and Raquel Fruchter.

[14]  Certificate & Decl. of Counsel, Ex. 5, Federal's Updated Priv. Log, at Entry Nos. 11, 13-22, 24-25; *id.*, Ex. 6, Federal's Updated Redaction Log, at Entry Nos. 81 & 82.

[15]  Certificate & Decl. of Counsel, at ¶ 8.

[16]  Certificate & Decl. of Counsel, at ¶¶ 6, 8.

[17]  Certificate & Decl. of Counsel, at ¶ 6.

[18]  Certificate & Decl. of Counsel, at ¶ 6.

[19]  Certificate & Decl. of Counsel, at ¶ 8; *see also id.*, Ex. 7, 4/27/2018 Email from J.Fortescue to G.Falaschi et al., at p. 2 ("As explained on our call, the documents withheld from Arch's production relating to drafting history involved outside counsel or Christine Cirillo (in-house counsel at Arch serving in the role as counsel).  There were no documents withheld simply because John Richardson was involved in the drafting.").

and who instead were tasked with providing legal advice to Mr. Richardson, just as they would for any other Arch employee.[20]

Federal, by contrast, insisted that it need not produce any document involving Kelly Daly, Stuart Cane, or any other legal department attorney staffed on the team drafting its policies, even though these lawyers are no different from Mr. Richardson.[21]   Furthermore, Federal stated that it purposefully assigned policy-writing duties to legal department attorneys to shield this activity from discovery.[22]   GDI pointed out the law does not allow companies to cloak their core business activities in privilege through a strategic use of lawyers, and contracts are the business product of insurers.[23]   Federal maintained its stance on that teleconference,[24] in a follow-up email,[25] and during a May 1, 2018 telephone call.[26]

## III.   THE GOVERNING LEGAL STANDARDS SUPPORT THIS MOTION

Although the attorney-client privilege and work-product doctrine serve important purposes, both "obstruct the truth finding process," so "they must be 'strictly confined within the narrowest possible limits consistent with the logic of their principles.'"   *Robinson v. Countrywide Home Loans, Inc.*, No. CIV.A. 08-1563, 2010 WL 4737816, at *2 (W.D. Pa.

---

[20]   Certificate & Decl. of Counsel, at ¶ 8; *see also id.*, Ex. 7, 4/27/2018 Email from J.Fortescue to G.Falaschi et al., at p. 2 ("As explained on our call, the documents withheld from Arch's production relating to drafting history involved outside counsel or Christine Cirillo (in-house counsel at Arch serving in the role as counsel).   There were no documents withheld simply because John Richardson was involved in the drafting.").

[21]   Certificate & Decl. of Counsel, at ¶ 8.

[22]   Certificate & Decl. of Counsel, at ¶ 8.

[23]   Certificate & Decl. of Counsel, at ¶ 8.

[24]   Certificate & Decl. of Counsel, at ¶ 8.

[25]   Certificate & Decl. of Counsel, Ex. 8, 5/1/2018 Email from J.Davis to M.Scanlon, at p. 1 ("The documents for which we asserted privilege are documents from or to the legal department involving an attorney in the legal department.").

[26]   Certificate & Decl. of Counsel, at ¶ 9.   GDI made significant efforts to avoid filing this motion.   For instance, it offered to send representatives to a Cozen O'Connor office to view hardcopies of these documents on a non-prejudicial, outside attorney eyes only basis to ascertain the importance of these documents prior to filing.   Federal would not agree to this compromise.

Nov. 16, 2010) (citing and quoting *In re Grand Jury Matter*, 147 F.R.D. 82, 84 (E.D. Pa. 1992); *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979)). A party asserting one or both, such as Federal, must establish that the attorney-client privilege or work-product protection applies. *Sullivan v. Warminster Twp.*, 274 F.R.D. 147, 150 (E.D. Pa. 2011).

In attempting to meet that burden, a party such as Federal may not rely solely on the involvement of an attorney in the communication or other document; rather, the attorney-client privilege and work-product protections apply "where the advice is legal in nature, and not where the lawyer provides non-legal business advice." *In re Processed Egg Prods. Antitrust Litig.*, 278 F.R.D. 112, 117 (E.D. Pa. 2011) (citing *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007)); *see also E.E.O.C. v. Guess?, Inc.*, 176 F. Supp. 2d 416, 423 (E.D. Pa. 2001) ("Work product prepared in the ordinary course of business is not immune from discovery.").

## IV.  ARGUMENT

### A.  The Court should order Federal to produce documents improperly included in its privilege and redaction logs.

#### 1.  The attorney-client privilege does not allow insurers to conceal their core business activities through a strategic use of lawyers.

Federal cannot meet its burden here because courts do not allow insurers to cloak their core commercial activities in secrecy by strategically delegating business tasks to attorneys. *See, e.g., AIU Ins. Co. v. TIG Ins. Co.*, No. 07 Civ. 7052(SHS)(HBP), 2008 WL 4067437, at *11 (S.D.N.Y Aug. 28, 2008) ("[A] document will not become privileged simply because an attorney recommended its preparation if it contains merely business-related or technical communications between corporate employees.").[27]

---

[27] *See also, e.g., Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 671 (S.D. Ind. 1991) ("To the extent that this attorney acted as a claims adjuster, claims process supervisor, or claim investigation monitor, and not as a legal adviser, the attorney-client privilege would not apply."); *Cal. Union Ins. Co. v. Nat. Union Fire Ins. Co.*, No. 86–CV–609, 1989 WL 48413, at *2

Thus, in *Mission National Insurance Co. v. Lilly*, where the insurer hired an outside law firm to handle its claim adjustment process, the District of Minnesota refused to allow the insurer to rely on that arrangement to block discovery, finding:

> No one other than plaintiff [the insurer] itself contributed to the difficult state of events arising from the concurrent role of Cozen & O'Connor.  It would not be fair to allow the insurer's decision in this regard to create a blanket obstruction to discovery of its claims investigation.  To the extent that Cozen & O'Connor acted as claims adjusters, then, their work-product, communications to client, and impressions about the facts will be treated herein as the ordinary business of plaintiff, outside the scope of the asserted privileges.  This approach results in the majority of the file being discoverable.

*Mission Nat. Ins. Co. v. Lilly*, 112 F.R.D. 160, 163 (D. Minn. 1986).  "This approach is also well-supported legally." *Id.*[28]

By Federal's own admission, it assigned policy drafting functions to attorneys within its legal department specifically to shield this activity from discovery.  As in *Mission National*, GDI respectfully submits that the Court should treat Federal's policy drafting for what it is—the "ordinary business" of an insurer—and require production.

Federal's reliance on the mere fact that the people involved in its BUE drafting were in its legal department also ignores a crucial distinction between the role played by contracts in the business of insurance and their function in nearly every other sector of the economy.  For most companies, contracts are ancillary to their main business line.  For instance, although Apple has

---

(N.D.N.Y. Apr. 27, 1989) (finding a memorandum not protected by attorney-client privilege because, even though it was prepared by an attorney, it was prepared in the course of his duties as a "claims' manager or adjuster for the defendants, not as an attorney" and contained "solely business advice").

[28]  *Mission Nat. Ins. Co.*, 112 F.R.D. at 163 ("It is clear that the attorney must be acting in the role of legal counsel with respect to the information in issue before the privilege may attach.  If the attorney is acting in some other role, as an ordinary businessman for example, the privilege may not be properly claimed." (citing *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977); *In re Grand Jury Subpoenas*, 561 F. Supp. 1247 (E.D.N.Y. 1982); 8 Wright & Miller, *Federal Practice Procedure, Civil*, § 2017, p. 136 (1970 and 1986 Supp.)).

8

its customers sign a contract when selling them an iPhone, that agreement merely spells out the terms and conditions of the sale of Apple's core business product (i.e., the iPhone). The contract is but a means to an end. The exact opposite holds true for insurers, who are in the business of selling contracts (i.e., insurance policies). Since contracts are an insurer's business, Federal cannot screen its policy drafting from discovery by hiring attorneys to do the contract writing.

Indeed, as with Federal, Arch likewise assigned policy drafting activities to Mr. Richardson, an attorney in its legal department. However, unlike Federal, Arch produced the vast majority of documents involving Mr. Richardson. In fact, during the meet-and-confer process, Arch clarified than no document was withheld or redacted simply because Mr. Richardson or another lawyer was involved. Instead, subject to a non-waiver agreement, Arch produced all Mr. Richardson's documents except for those he sent to, or received from, other attorneys—in Arch's legal department and Arch's outside counsel—who had no drafting responsibilities. Arch explained that such documents were sent specifically for the purpose of obtaining legal advice, and Mr. Richardson was treated like any other Arch employee seeking legal counsel. This approach is the only reasonable one to an insurer's policy drafting. Accordingly, Federal should follow the lead of its co-defendant, Arch, and produce its drafting history subject to this much narrower limitation.

> **2.      The work-product doctrine does not apply to documents created before Federal could reasonably anticipate this litigation, or that Federal made in the ordinary course of business.**

Federal also asserts that eleven of the fifteen documents in the privilege log are also protected from discovery under the work-product doctrine.[29] However, this assertion, too, fails for two reasons.

---

[29]   Certificate & Decl. of Counsel, Ex. 5, Federal's Updated Priv. Log, at Entry No. 11 ("New D&O policy draft"), Entry No. 13 ("Internal description for 14-02-11478"), Entry No. 14 ("Re:

First, when determining whether a document was created in anticipation of litigation, courts "look to 'the state of mind of the party preparing the document or the party ordering preparation of the document.' This inquiry is limited by the requirement that the party's anticipation of litigation be objectively reasonable." *Sullivan v. Warminster Twp.*, 274 F.R.D. 147, 152 (E.D. Pa. 2011) (ellipsis omitted) (quoting *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993)).

In this case, the drafting history documents relate to two policy forms, which Federal released in 2002 and May 2012, respectively; yet, GDI did not tender its *initial* claim for coverage at issue here until 2013, and it was significantly after that tender that a legal dispute arose. Based on that chronology alone, Federal cannot meet its burden to prove that the disputed documents were created in reasonable anticipation of litigation, and thus Federal should produce the six documents created before May 2012.[30]

---

Internal description for 14-02-11478"), Entry No. 15 ("Re: Bump Up Excl"), Entry No. 20 ("Confirmed: Bump Up Conference Call (Mar 25 01:00 PM EDT in 1.877.385.5448)"), Entry No. 21 ("Agenda for 4/29 D&O Hot Topics Call"), Entry No. 22 ("Materials for 4/29 D&O Hot Topic Call"), Entry No. 24 ("End request – All (Stuart Cane) Reviewed"), or Entry No. 25 ("02/16/2012 Public D&O Endorsements Call Agenda"); *id.*, Ex. 6, Federal's Updated Redaction Log, at Entry No. 81 ("Fw: Different approach"), Entry No. 82 ("Fw: Ace Bump Up Exclusion"). No subject is listed for the emails in Entry Nos. 16-19 in the updated privilege log, and it is unclear whether Federal neglected to include that information or redacted it as privileged. The subject lines of Entry Nos. 81 and 82 of the redaction log are gleaned from Entry Nos. 15 and 17 in Federal's original privilege log. *Id.*, Ex. 10, Federal's Original Priv. Log, at Entry Nos. 15 & 17. On May 1, 2018, Federal produced redacted versions of those originally withheld documents. *Id.*, Ex. 8, 5/1/2018 Email from J.Davis to M.Scanlon, at p. 1 ("We did, however, find two document families in which the involvement of the legal department was at the end of a trail and we will redact the privileged portions of those documents and produce them.").

[30] Certificate & Decl. of Counsel, Ex. 5, Federal's Updated Priv. Log, at Entry No. 11 (created on April 8, 2002), Entry Nos. 13 and 14 (created on February 15, 2011), Entry No. 24 (created September 28, 2005), Entry No. 25 (created February 15, 2012); *id.*, Ex. 6, Federal's Updated Redaction Log, at Entry No. 81 (created April 26, 2012).

Second, the work-product doctrine applies only to materials created in the course of preparation for possible litigation; work product "prepared in the ordinary course of business is not immune from discovery." *Guess?, Inc.*, 176 F. Supp. 2d at 423 (citations omitted) (citing authority). Only documents that "would not have been created in substantially similar form but for the prospect of litigation" are protected from discovery. *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633-SI, 2017 WL 4857596, at *6 (D. Or. Oct. 27, 2017) (internal citations and quotation marks omitted) (citing and quoting authority). Moreover, "delegating business functions to counsel to oversee does not provide work-product protection to the materials created for those business functions." *Id.*[31]

As discussed above, policy drafting is integral to an insurer's business, and Federal would need to draft and amend its policies even if no litigation were pending to meet the needs of the marketplace. Federal, which has the burden here, cannot establish that any of its BUE drafting history documents would not have been created but for its coverage dispute with GDI

---

[31] *See also, e.g., Hawker v. BancInsurance, Inc.*, No. 1:12–cv–01261–SAB, 2013 WL 6843088, at *7 (E.D. Cal. Dec. 27, 2013) (finding that the work product doctrine did not apply because the attorney was "directed to prepare a formal legal evaluation on whether [the insurance company] was entitled to decline a claim," indicating that "the representation was focused not on litigation, but was in the ordinary course of business to determine whether there was a legal basis to deny the claim"); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306 (D.N.J. 2008) (to qualify for work product protection, litigation must have been reasonably anticipated and the documents were prepared "primarily for the purpose of litigation"); *Stephenson Equity Co. v. Credit Bancorp., Ltd.*, No. 99 CIV 11395IRWS, 2002 WL 59418, at *3 (S.D.N.Y. Jan. 16, 2002) ("Courts have held that reports prepared by attorneys investigating insurance claims on behalf of an insurance company are not privileged, because the reports, although prepared by attorneys, are prepared as part of the 'regular business' of the company." (internal quotations and citation omitted)); *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115, 118 (N.D. Ga. 1972) ("[I]t can hardly be said that the evaluation of a routine claim from a policyholder is undertaken in anticipation of litigation, even though litigation often does result from denial of [an insurance] claim."); *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 670-71 (S.D. Ind. 1991) (finding that the work product doctrine did not apply for documents that were produced "before any investigations or evaluations were even started" on the insurance claim, reasoning that Auto-Owners could not establish that these documents were prepared solely for the purpose of litigation).

(or another specific policyholder). Thus, none of those documents are protected work product, regardless of when the documents were created.

Furthermore, even if the Court were to decline to find that Federal's BUE drafting histories are categorically discoverable, Federal has not shown and cannot show that all the disputed documents were created in preparation for litigation. For example, two documents in Federal's privilege log involve discussions of an April 29, 2013 "D&O Hot Topics Call"; Federal cannot meet its burden to prove that these documents relate to a legal dispute rather than to, for example, an industry talk or a business pitch. Thus, Federal should produce at least those documents and all others not tied to a specific dispute with GDI or another policyholder.

**B.** **In the alternative, the Court should review the fifteen documents *in camera* to determine whether the attorney-client privilege or work-product protection applies.**

Even if the Court declines to grant this motion based on the facial inadequacies of Federal's privilege and redaction logs, the boilerplate objections in Federal's logs do not affirmatively establish that the attorney-client privilege or the work-product doctrine immunize any of the withheld or redacted material from discovery. Thus, an "*in camera* inspection" of Federal's documents is the "proper procedure" for determining whether it has properly asserted attorney-client privilege or work-product protection. *United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir. 1988) (citing *Kerr v. U.S. District Court*, 426 U.S. 394, 405 (1976); *United States v. Nixon*, 418 U.S. 683, 706 (1974)).[32] Thus, the Court should order Federal to submit the fifteen documents for *in camera* review.

---

[32] *See, e.g., United Coal Cos.*, 839 F.2d at 967 ("As with the documents on which a claim of attorney client privilege was made, those on which a work product privilege claim was made must be inspected by the court *in camera* and ruled upon."); *Southeastern Pa. Transp. Auth. v. Caremarkpcs Health, L.P.*, 254 F.R.D. 253, 256 n.2 (E.D. Pa. 2008) ("The Third Circuit has recognized that in camera review is the appropriate method for resolving privilege disputes.") (internal quotations omitted); *Guess?, Inc.*, 176 F. Supp. 2d at 423 (requiring the defendant-

V.    **CONCLUSION**

For the foregoing reasons, the Court should order Federal to produce the fifteen documents challenged in this motion or, in the alternative, require Federal to submit those materials for *in camera* review.

This 9th day of May 2018                    Respectfully submitted,

                                            /s/ Richard G. Placey
                                            Richard L. Scheff, Esq.
                                            Richard G. Placey, Esq.
                                            Steven Pachman, Esq.
                                            MONTGOMERY, MCCRACKEN, WALKER
                                            & RHOADS, LLP
                                            1735 Market Street
                                            Philadelphia, PA 19103
                                            Email: rscheff@mmwr.com
                                            Email: rplacey@mmwr.com
                                            Email: spachman@mmwr.com

                                            Barry I. Buchman, Esq. (*pro hac vice*)
                                            Michael J. Scanlon (*pro hac vice*)
                                            HAYNES AND BOONE, LLP
                                            800 17th Street NW, Suite 500
                                            Washington, DC 20006
                                            Telephone:  202-654-2500
                                            Email:  barry.buchman@haynesboone.com
                                            Email:  michael.scanlon@haynesboone.com

                                            *Counsel for Gardner Denver, Inc.*

---

employer to submit its entire robbery investigative file for *in camera* review where it failed to describe "the nature of the documents, communications or things withheld in a manner that would enable either this Court or the [plaintiff] to assess the applicability of the privilege"); *Dansko Holdings, Inc. v. Benefit Trust Co.*, NO. 16-324, 2017 WL 5593321, at *3 (E.D. Pa. Nov. 21, 2017) (performing an in camera review of allegedly privileged documents because "[t]he point at which an insurer's routine claim investigation shifts to anticipation of litigation depends on the facts of each case").