UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARDNER DENVER, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> ARCH INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY; and FEDERAL INSURANCE COMPANY, <br><br> *Defendants*. | Civil Action No. 16-CV-00159-JHS |

**REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF PLAINTIFF GARDNER DENVER, INC.'S MOTION TO COMPEL REGARDING PRIVILEGE AND WORK PRODUCT DESIGNATIONS ASSERTED BY DEFENDANT FEDERAL INSURANCE COMPANY**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. LEGAL ARGUMENT ..................................................................................................... 3
    A.     Federal cannot reduce its high burden on the Motion through its belated criticism of the Court's prior relevancy rulings. ..................................................... 3
    B.     Federal cannot meet its burden with boilerplate objections and references to its organization chart. ........................................................................................ 5
    C.     At a minimum, Federal should provide the fifteen documents to the Court *in camera* to determine whether the attorney-client privilege applies. .................. 8
III. CONCLUSION ................................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cottillion v. United Ref. Co.,*
279 F.R.D. 290 (W.D. Pa. 2011) ........................................................................................6

*Gardner Denver, Inc. v. Arch Ins. Co.,*
No. CV 16-0159, 2016 WL 7324646 (E.D. Pa. Dec. 16, 2016). ........................................4

*In re Grand Jury Investigation,*
599 F.2d 1224 (3d Cir. 1979)..............................................................................................3

*King Drug Co. of Florence v. Cephalon, Inc.,*
No. 2:06-CV-1797, 2013 WL 4836752 (E.D. Pa. Sept. 11, 2013) .....................................7

*Kirkpatrick v. SPX Corp.,*
No. 07-CV-0055 J, 2008 WL 11336679 (D. Wyo. July 21, 2008) .....................................7

*N.J. Mfrs. Ins. Co. v. Brady,*
No. 3:15-cv-02236, 2017 U.S. Dist. LEXIS 8268 (M.D. Pa. Jan. 20, 2017) ......................8

*Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B,*
230 F.R.D. 398 (D. Md. 2005)............................................................................................5

*Ross v. Abercrombie & Fitch Co.,*
No. 2:05-CV-0819, 2009 WL 779328 (S.D. Ohio Mar. 19, 2009) .....................................6

*Sullivan v. Warminster Twp.,*
274 F.R.D. 147 (E.D. Pa. 2011).........................................................................................3

GDI submits this reply memorandum in further support of its motion to compel Federal to produce documents withheld based on improper assertions of attorney-client privilege or work-product protection in Entry Nos. 11, 13-22, 24, and 25 of its privilege log and Entry Nos. 81 and 82 of its redaction log (the "**Motion**" (ECF Doc. Nos. 81 and 82)[1]).[2]

I. **INTRODUCTION**

GDI's motion to compel challenges fifteen documents that Federal withheld from discovery or produced only in redacted form even though they relate to the drafting history of "bump up" exclusions, which are at the heart of this case. According to Federal's logs, the attorney-client privilege shields all fifteen from discovery, and the work-product doctrine provides additional protection for thirteen of the fifteen.

In its opposition, Federal abandons its reliance on the work-product doctrine and instead focuses entirely on the attorney-client privilege to continue withholding documents that are among the most central materials in this case, as the Court has previously noted.

In doing so, Federal tries two tactics. First, Federal attempts to diminish its burden, as the party asserting the privilege, by belatedly questioning the propriety of the Court's multiple prior rulings that Federal's drafting history is relevant. Federal does so because it recognizes that the attorney-client privilege is an exception to the rule that relevant evidence should be available to all parties and thus that courts construe the privilege narrowly and correspondingly place a

---

[1]  For clarity, ECF Doc. No. 81 is the redacted version of the Motion, and ECF Doc. No. 82 is the unredacted version filed under seal. Although there are two docket numbers, there is only one motion, and the filings are identical except for the redactions.

[2]  In this brief, "**GDI**" refers to Plaintiff Gardner Denver, Inc.; "**Federal**" refers to Federal Insurance Company; "**Arch**" refers to Defendant Arch Insurance Company; "**Continental**" refers to Defendant Continental Casualty Company; "**Defendants**" refers to Arch, Continental, and Federal, collectively; "**D&O policies**" refers to directors and officers insurance policies and "**Fed. Opp. Br.**" refers to Federal Insurance Company's Memorandum in Opposition to the Motion. The most recent version of Federal's privilege log is attached to the Motion as **Exhibit 5** and the most recent version of its redaction log is attached to the Motion as **Exhibit 6**.

high burden on parties asserting the privilege.  Second, Federal seeks to defend its privilege assertions by focusing on where the in-house attorneys on its log worked within Federal (i.e., the legal department), rather than on what functions they were performing (i.e., preparing Federal's core business product—its policies).

Both prongs of Federal's opposition are fatally flawed.  First, not only is Federal's passing shot at the Court's prior relevance rulings beyond late, it is also baseless – just as Federal's relevance arguments have always been.  And, as explained below, information that GDI has obtained on its own since the Court's prior rulings only further proves the correctness of those rulings.  Second, organizational charts do not determine privilege.  It does not matter *where* within a company an attorney sits; what matters for privilege determinations is *whether* the lawyer was communicating with his or her client *for the purpose of providing legal advice*. Moreover, because legal department attorneys often handle business functions for their employers, a party cannot meet its burden by simply inviting the Court to infer that a lawyer in its legal department must have been providing legal services.  Here, Federal does not seriously argue that the lawyers on its logs were not involved in drafting Federal's D&O policies, including its "bump up" exclusions.  More specifically, Federal never states that those attorneys never played similar roles to that of John Richardson, Arch's Deputy General Counsel, who was involved in drafting Arch's policies and from whom Arch has produced a significant number of documents.

Accordingly, Federal should produce the challenged documents at issue.  At minimum, consistent with Third Circuit precedent, Federal should submit the documents to the Court for an *in camera* review before the Court rules on the Motion.  In the interest of efficiency, Federal

should send copies of the fifteen challenged documents to chambers now so the Court has the option of reviewing them before the June 7, 2018 telephonic hearing on the Motion.

## II. LEGAL ARGUMENT

### A. Federal cannot reduce its high burden on the Motion through its belated criticism of the Court's prior relevancy rulings.

Although the attorney-client privilege serves the important goal of fostering disclosure and communication between attorney and client, "because the privilege [also] obstructs the search for the truth[,]" it must be "strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979). Thus, the party claiming attorney-client privilege bears the burden of proving the documents are, in fact, privileged. *Sullivan v. Warminster Twp.*, 274 F.R.D. 147, 150 (E.D. Pa. 2011).

Here, Federal improperly seeks to circumvent these principles by attempting to minimize the importance of the fifteen challenged documents. Federal asserts that they are of little importance to the case because the "bump up" exclusions in Federal's primary policies are worded differently than that in the Arch primary policy here.[3]

But this effort is the very one this Court has previously rejected. Indeed, as noted in the Motion, in the September 15, 2017 hearing the Court specifically rejected Federal's argument

[REDACTED]

---

[3] Fed. Opp. Br. at 3 ("Federal's Policy Language is Not at Issue in This Litigation").

3

███████████████[4]

*See also id.* Certificate & Decl. of Counsel (attached to the Motion), Ex. 2, Tr. of 9/15/2017 Hr'g, at 37:3-17 ███████████████████████████████████████████████████████████████.

Further, each of the challenged documents is an email to or from Anthony Galban, the Senior Vice President and Global D&O Product Manager at Federal's parent company, Chubb, whose communications concerning "bump up" exclusions the Court has twice found to be particularly relevant. As the Court is aware, Mr. Galban made public statements that go to the heart of this case—i.e., that "bump up" exclusions eliminate coverage for acquisitions *by* the policyholder, but not for acquisitions *of* the policyholder.[5]

GDI's due diligence since the September 15, 2017 motion to compel hearing has revealed that Mr. Galban also made at least two other vital concessions relevant to a policyholder's reasonable expectations. First, Mr. Galban stated that the market would not tolerate expanding the "bump up" exclusion to include acquisitions *of* the policyholder, as occurred here, because claims arising from such acquisitions fall within the "breadbasket" of directors and officers insurance coverage.[6] Second, Mr. Galban acknowledged that, because insurers could not

---

[4] Certificate & Decl. of Counsel (attached to the Motion), Ex. 2, Tr. of 9/15/2017 Hr'g, at 36:2-17 (emphasis supplied).

[5] *Gardner Denver, Inc. v. Arch Ins. Co.*, No. CV 16-0159, 2016 WL 7324646, at *5 (E.D. Pa. Dec. 16, 2016) ("[T]ypically the bump-up exclusion has been designed to apply to additional considerations paid by acquiring companies that they pay above and beyond the initial offer . . . . Most of the claims we're seeing today are characterized as breach of fiduciary duty claims against the acquiree's board of directors. And so therefore the bump-up exclusion doesn't really get the kind of use it used to with these claims that have been taking place in the last couple years." (original brackets omitted; new brackets added) (quoting Doc. No. 3, 1st Am. Compl., at ¶ 54)).

[6] Decl. of Counsel, Ex. 11 (". . . is there some exclusionary approach we can take? And the answer there is when you're talking about breach of fiduciary duty claims against Directors and

4

exclude this type of coverage, insurers typically deal with the risk by raising premiums and self-insured retentions—the very two things that Arch and Federal did during the summer of 2012 after GDI became an acquisition target, and they had to factor that development into their underwriting of their policies under which GDI later made its coverage claims that are at issue here.[7] As with Mr. Galban's statement already cited by the Court in its opinion on the motions to dismiss, GDI found these additional statements in the public domain, and has since produced them in discovery to Arch and Federal.[8]

Because the documents at issue likely contain some of the most probative information in this case, Federal cannot reduce its burden on this Motion. Instead, the Court should require production of the fifteen challenged documents unless Federal can establish that they involve an attorney's communications with his or her client for the purpose of providing legal advice.

### B. Federal cannot meet its burden with boilerplate objections and references to its organization chart.

Federal cannot meet its burden because, while "courts state that they do not intend to weaken the privilege, they are mindful that corporate clients could attempt to hide mountains of otherwise discoverable information behind a veil of secrecy by using in-house legal departments as conduits of otherwise unprivileged information." *Neuberger Berman Real Estate Income*

---

Officers, you're right in the breadbasket of a D&O contract. There's no way you could issue a D&O contract with trying to exclude that stuff.").

[7] Decl. of Counsel, Ex. 11 ("So, what you're left with is sort of the general issue – um, you know, where is this exposure? Where do I want to place my limits and my exposure? Um, you know, how do I want to treat that are with possibly deductible is a possible tool. Uh, rate is also a conversation when you're increasing lost cost of this type. ").

[8] Decl. of Counsel, ¶ 2. Federal presumably is not surprised by the existence of these additional statements from Mr. Galban, as they come from the same conference as the Mr. Galban statement that the Court already cited in its motion to dismiss decision, and because Federal's parent company, Chubb, occasionally publicizes videos of Mr. Galban speaking about D&O issues. Chubb, Worth the Risk? Highlights from Chubb 2013 Private Company Risk Survey, http://www.chubb.com/businesses/csi/chubb12192.pdf (last visited May 30, 2018) ("This video features Chubb's Tony Galban discussing private companies' D&O liability risks and how the right insurance can mitigate them.").

*Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 411 n.20 (D. Md. 2005). Indeed, it "is well-settled that the mere fact that an attorney attended a meeting does not render everything said or done at that meeting privileged. Rather, the primary consideration is whether the communications memorialized by the minutes were made for the purpose of obtaining legal advice." *Cottillion v. United Ref. Co.*, 279 F.R.D. 290, 311 (W.D. Pa. 2011) (quotation marks and internal citations omitted) (citing and quoting authority).[9]

Here, Federal violates these principles by focusing on *where* its in-house attorneys at issue worked (i.e., the legal department), instead of on *what* functions they were performing in connection with the challenged documents. Specifically, the opposition focuses on Federal's decision to place four attorneys—Kelly Daly, Raquel Fruchter, Jessica Moore, and Stuart Cane—in its legal department.[10] Nowhere does Federal state that these four in-house attorneys perform solely legal functions; on the contrary, Federal tasked them with business functions such as drafting policies. For example, Ms. Fruchter's LinkedIn page shows that Federal's parent company, Chubb, assigned her the task of "[d]raft[ing] complex insurance policies and related policy endorsements used to support all specialty lines underwriters" as part of her job as Managing Counsel, Vice President.[11]

Based on its flawed focus solely in the location of the four attorneys at issue, Federal asks the Court to accept its conclusory assertion that communications to and from these attorneys had to be for the purpose of giving and receiving legal advice; but such conclusory and circular

---

[9] Moreover, where the same document contains both legal and business advice, "the proper course of action is to produce the documents with the legal advice redacted rather than refuse to produce them at all." *Ross v. Abercrombie & Fitch Co.*, No. 2:05-CV-0819, 2009 WL 779328, at *3 (S.D. Ohio Mar. 19, 2009).
[10] Fed. Opp. Br. at 2, 5-6.
[11] Raquel Fruchter, LinkedIn, https://www.linkedin.com/in/raquel-fruchter-835a8b5/ (last visited May 27, 2018).

6

arguments do *not* satisfy Federal's burden. *See, e.g., King Drug Co. of Florence v. Cephalon, Inc.*, No. 2:06-CV-1797, 2013 WL 4836752, at *4 (E.D. Pa. Sept. 11, 2013) (finding that the defendant did not establish that "the communications at issue were legal in nature and therefore properly withheld" where its privilege log descriptions "were too general to permit the Court to resolve the dispute without reviewing the communications themselves"). Indeed, a federal court rejected similar conclusory assertions of privilege made by Federal's parent company—Chubb—in analogous circumstances:

> Chubb has failed to establish an attorney client relationship and the privileged nature of the communications. The conclusory and generalized blanket claims of this privilege are insufficient. The privilege log does not set forth information that would allow one to evaluate the assertion of this privilege.

*Kirkpatrick v. SPX Corp.*, No. 07-CV-0055 J, 2008 WL 11336679, at *2 (D. Wyo. July 21, 2008).

Moreover, the communication that Federal points to as an example of its good faith production of non-privileged materials (Fed. Opp. Br. at 3) proves too much; it reads:

> I would like to organize a call to talk about our approach to the bump up requests. Feb 26-Feb 28 or March 1 are good. Pls let me know what works best and I'll send out a calendar invite.[12]

This email is completely non-substantive; in addition, Federal's use of it as an example of permissible discovery indicates problems to come. Specifically, Federal's position—producing this e-mail but not any of the underlying discussions involving Mr. Galban's participation in the call—indicates that Federal is likely to instruct Mr. Galban not to answer any questions about the underlying call at his deposition. Thus, Federal's example document highlights the untenable nature of its position, rather than supporting that position.

---

[12] Fed. Opp. Br., Ex. A, 2/15/2013 Email from C.Gomes to K.Daly, at 2.

### C. At a minimum, Federal should provide the fifteen documents to the Court *in camera* to determine whether the attorney-client privilege applies.

In the Motion, GDI cited a litany of authority holding that *in camera* review is the preferred approach where there is any doubt regarding whether a party such as Federal has met its burden, especially in the context of insurance coverage cases. GDI's Mot. to Compel, at pp. 12-13 & n.32. Federal has not cited any contrary case law.[13] Instead, it merely insists that its log, containing little more than the identity of the underlying attorneys, is sufficient to establish that the privilege applies. As was established *supra*, Part II.B, this simply is not so.

Federal also fails to rebut the practical benefits of an *in camera* review. GDI challenges only fifteen documents. Submitting those materials to chambers will require little from Federal, and would permit the Court to review them in an efficient manner should the Court deem such a review appropriate. Given the importance of Mr. Galban's statements regarding "bump up" exclusions to this case, including to the reasonable expectations of insurers and policyholders in the marketplace, Federal fails to explain what the downside would be if the Court conducted an in camera review to make sure that this matter is decided correctly now before the start of depositions. If Federal is confident in its position that the fifteen challenged documents are privileged, it should welcome the Court's review.

To the extent that the Court decides to review the fifteen challenged documents when deciding the Motion, GDI will also submit to chambers copies of a draft policy and markup attached to an April 25, 2012 email from Mr. Richardson of Arch to Michael Price that was

---

[13] Indeed, in the case that Federal cites (at p 7 of its brief) for the proposition that privilege logs can be sufficient, *N.J. Mfrs. Ins. Co. v. Brady*, No. 3:15-cv-02236, 2017 U.S. Dist. LEXIS 8268, at *46-48 (M.D. Pa. Jan. 20, 2017), the Court in fact conducted an *in camera* review of one set of documents as to which privilege was claimed, and ordered production of a more detailed privilege log as to another set of documents, after which it would "provide Defendants another opportunity to raise a challenge to the sufficiency of the log."

produced by Arch.[14] Those materials are illustrative as to the production of drafting history materials in a way that protects privilege without shielding one of an insurer's core business activities from discovery behind a wall of privilege objections.

## III. CONCLUSION

Just because an attorney is part of an in-house legal department does not automatically mean his or her communications are privileged. Thus, Federal cannot establish that the privilege applies simply by pointing to an organizational chart, and Federal should either produce the fifteen challenged documents in redacted form or else submit those materials to the Court for *in camera* review.

---

[14] GDI would prefer to submit this confidential document to chambers, rather than enter it into the public record, as a courtesy to Arch, which protected any potential privilege, while still producing the drafting history materials in this document.

This 30th day of May 2018

Respectfully submitted,

/s/ Richard G. Placey
Richard L. Scheff, Esq.
Richard G. Placey, Esq.
Steven Pachman, Esq.
David F. Herman, Esq.
MONTGOMERY, MCCRACKEN, WALKER
& RHOADS, LLP
1735 Market Street
Philadelphia, PA 19103
Email: rscheff@mmwr.com
Email: rplacey@mmwr.com
Email: spachman@mmwr.com
Email: dherman@mmwr.com

Barry I. Buchman, Esq. (*pro hac vice*)
Michael J. Scanlon (*pro hac vice*)
HAYNES AND BOONE, LLP
800 17th Street NW, Suite 500
Washington, DC 20006
Telephone: 202-654-2500
Email: barry.buchman@haynesboone.com
Email: michael.scanlon@haynesboone.com

*Counsel for Gardner Denver, Inc.*